Anthony Barnes (Bar No. 199048)
Email: amb@atalawgroup.com
Jason Flanders (Bar No. 238007)
Email: jrf@atalawgroup.com
AQUA TERRA AERIS LAW GROUP LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Phone: (917) 371 - 8293

Kelly Clark (Bar No. 312251)
Email: kelly@losangeleswaterkeeper.org
LOS ANGELES WATERKEEPER
120 Broadway, Suite 105
Santa Monica, CA 90401
Phone: (310) 394 - 6162

*Attorneys for Plaintiff*
LOS ANGELES WATERKEEPER

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>HOLLIDAY ROCK, CO, INC., a California corporation,<br><br>        Defendant. | Case No.: CV 21-8966-DMG (MAAx)<br><br>CONSENT DECREE [12] |

## CONSENT DECREE

**WHEREAS,** Los Angeles Waterkeeper ("Waterkeeper") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS,** Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Holliday Rock Co, Inc. ("Holliday Rock" or "Defendant") owns and operates an industrial facility located at 11420 Penrose Street, Sun Valley, CA 91352 ("Facility).

**WHEREAS**, the industrial activities at the Facility consist of manufacture ready-mix concrete for the construction industry.  The Facility is categorized under Standard Industrial Classification ("SIC") Code 3273— Ready-Mixed Concrete.

**WHEREAS**, stormwater discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates:  (1) develop and implement a stormwater pollution prevention plan ("SWPPP") and a stormwater monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants

through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on June 2, 2021, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Director of the Los Angeles Regional Water Quality Control Board ("Regional Water Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit, Water Quality Order 2014-0057-DWQ as amended by Order No. 2015-0122-DWQ, at the Facility;

**WHEREAS**, on November 15, 2021, Waterkeeper filed a complaint against Holliday Rock in the Central District of California, Civil Case No. 2:21-cv-08966 ("Complaint");

**WHEREAS**, Plaintiff's complaint alleged violations of the General Permit and CWA for Defendant's discharges of pollutants into storm drains and surface waters, including Tujunga Wash, Los Angeles River, Queensway Bay, and Junipero Beach, and ultimately the Pacific Ocean ("Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings;

**WHEREAS,** the Settling Parties agree that it is in their mutual interest to maintain confidentiality regarding any settlement negotiations, findings by any Party and photographs of the Facility;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District;

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4. Waterkeeper has standing to bring this action;

5. The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the three (3) year term of this Consent Decree.

**I. OBJECTIVES**

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by Waterkeeper in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.      In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.   AGENCY REVIEW AND CONSENT DECREE TERM

### A.   Agency Review of Consent Decree

8.      <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant.  In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

9.      <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135,5, in order coordinate the Court's calendar with the 45-day review period.

10.     <u>Entry of Consent Decree</u>. Following expiration of the Federal Agencies' 45-day review period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B.   Effective Date and Term of Consent Decree

11.     <u>Effective Date</u>. The Effective Date of this Consent Decree shall be the date of entry by the Court.

12.     <u>Term & Termination</u>. This Consent Decree shall terminate three (3) years from the Effective Date unless one of the Settling Parties has invoked Dispute Resolution in accordance with Section IV of this Consent Decree, in which case the Consent Decree will terminate within the earlier of fifteen (15) days of notice by the Settling Parties that invoked Dispute Resolution that the dispute has

been fully resolved or an order of the Court resolving the dispute and terminating the Consent Decree.

## III.   COMMITMENTS OF THE SETTLING PARTIES

### A.   Storm Water Pollution Control Best Management Practices

13.   <u>Current and Additional Best Management Practices</u>. In addition to maintaining the current Best Management Practices ("BMPs") described in the Facility's Storm Water Pollution Plan ("SWPPP"), Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit, including but not limited to those that achieve the Best Available Technology Economically Achievable ("BAT") and the Best Conventional Treatment Technology ("BCT").  In addition, the General Permit Receiving Water Limitations require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan."  Defendant shall develop and implement BMPs necessary to comply with the General Permit requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility in compliance with this Consent Decree.

14.   <u>Structural and Non-Structural BMPs for the Facility</u>. To increase the Facility's capacity to retain and reuse storm water to approximately 300,000 gallons of retention with reuse at a rate of 25,000 gallons per day and eliminate most storm water discharges at the Facility, within forty-five (45) days of the Effective Date, Defendant shall develop and implement the following Facility upgrades and BMPs, and update the Facility SWPPP accordingly:

(a)     Holliday Rock shall install a 110-foot-long, 6-foot-wide, 2-inch-deep v-gutter alongside the northern end of the Facility to reroute water into the ponds.

(b)     Holliday Rock shall implement 20 linear feet of 8-inch retaining curb at the gate at Penrose Street.

(c)     Holliday Rock shall remove, regrade, and replace a 7250 square foot area with concrete by the southern side at the gate at Tujunga Avenue, graded at a high enough elevation to reroute water back into the site and prevent it from discharging at the gate.

(d)     Holliday Rock shall require trucks to go through and use a truck wash station in the central portion of the Facility and for full washing of trucks prior to leaving the site.

(e)     Holliday Rock shall install a sump pump adjacent to the truck loading area, with the capacity to pump water at a rate of approximately 300 gallons per minute, and pump collected storm water to the retention pond area in the southwest section of the Facility for reuse.

(f)     To the extent retained and available, storm water at the Facility shall be reused in the industrial processes at a rate of approximately 25,000 gallons per day.

**B.     Sampling at the Facility**

15.     Holliday Rock shall develop a monitoring program consistent with the General Permit.  During the life of this Consent Decree, Defendant shall collect samples of storm water discharge from Discharge Locations designated as Sample Point 1 and Sample Point 2 until the storm water capture and treatment system is fully implemented and operational, at which time Holliday Rock shall only have a single discharge location.  Defendant shall collect storm water samples from each Discharge Location from at least four (4) qualified storm events as required by the

General Permit (i.e., two Qualifying Storm Events during the first half of the Reporting Year[1] and two Qualifying Storm Events during the second half of the Reporting Year). A Qualifying Storm Event is a storm that produces a discharge from at least one (1) drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. Any failure to collect samples as required by this Consent Decree shall be documented and submitted to Waterkeeper by email within five (5) days of the date a sample should have been collected but was not. Defendant shall also collect samples of any discharge of retained storm water before discharging it, or at the time of discharge.

16. <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed for the parameters listed in Table 1.

17. <u>Laboratory and Holding Time</u>. Except for pH samples, delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

18. <u>Detection Limit</u>. Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

19. <u>Reporting</u>. Within fifteen (15) days of receiving the results, Defendant shall provide notice to Waterkeeper via e-mail, sent to the address listed in paragraph 54, when complete laboratory results of samples collected at the Facility are uploaded to the State Board's Stormwater Multiple Application and Report Tracking System ("SMARTS").

---

[1] The Reporting Year is defined as July 1 through June 30.

CONSENT DECREE [12]

## C.    Reduction of Pollutants in Discharges

20.    <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.  As of the Effective Date, and for the remainder of the term of this Consent Decree, if storm water samples demonstrate an exceedance of a numeric limit in Table 1 in a single Reporting Year, Defendant shall comply with the action plan requirement set forth below.

TABLE 1

| Analytes | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L | EPA Benchmark |
| Oil & Grease | 15 mg/L | EPA Benchmark |
| Zinc | 0.159 mg/L | Numeric Effluent Limit |
| Copper | 0.06749 mg/L | Numeric Effluent Limit |
| Iron | 1 mg/L | EPA Benchmark |
| Aluminum | 0.75 mg/L | EPA Benchmark |
| pH | 6.5-8.5 s.u. | Basin Plan |

21.    <u>Action Plan for Table 1 Exceedances</u>. Table 1 Exceedances are defined as follows: beginning with the 2021-2022 reporting year, in any reporting year under the term of this Consent Decree an Action plan shall be required if 1) the annual average of all storm water analytical results for individual pollutant(s) exceeds any of the applicable benchmarks as set forth in Table 1; 2) any two storm water samples contain a single pollutant at a concentration that exceeds an Instantaneous NAL as set forth in Table 2 of the Permit; or 3) any two storm water contain a single pollutant at a concentration that exceeds a Numeric Effluent Limit as noted in Table 1 and as defined in Attachment E (List of Existing Total Maximum Daily Loads (TMDLS) Applicable to Industrial Storm Water Discharges) of the General Permit ("Exceedance").  In any Reporting Year during which a sample demonstrates an Exceedance of Table 1 as defined above, Defendant shall prepare and submit to Waterkeeper a plan for reducing and/or

eliminating the discharge of pollutants ("Action Plan") for the Facility by June 30. The Action Plan must address each Exceedance of a Table 1 analyte separately.

    a.  <u>Action Plan Requirements</u>. Each Action Plan submitted shall include at a minimum:  (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs.  The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 of the upcoming Reporting Year.  Defendant shall notify Waterkeeper in writing when an Action Plan has been implemented.

        i.  Any Action Plan required under this Consent Decree following the 2023-2024 reporting year, shall require, at a minimum, the following BMP:

           (a)  Capture and reuse of storm water, consistent with the Volume-Based BMP standards from the Permit (Section X.H.6.a);

    b.  <u>Action Plan Review</u>. Waterkeeper shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments.  Within fourteen (14) days of receiving Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated.  Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree.  Any disputes as to the adequacy of

an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

c. <u>Action Plan Payments</u>. Defendant shall pay Three Thousand Dollars ($3,000) each time an Action Plan is submitted to Waterkeeper. Payments shall be made to "Los Angeles Waterkeeper" addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401.  Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

**D.    Visual Observations**

22.    <u>Storm Water Discharge Observations</u>. During the life of this Consent Decree, Defendant shall conduct visual observations during the Facility's operating hours during every rain event that produces a discharge at all locations where storm water is discharged from the Facility.

23.    <u>Non-Storm Water Discharge Observations</u>. During the life of this Consent Decree, Defendant shall conduct monthly non-storm water visual observations at each discharge location.

24.    <u>Visual Observations Records</u>. Defendant shall maintain observation records to document compliance with paragraphs 22 and 23 and shall provide Waterkeeper with a copy of those records within fourteen (14) days of receipt of a written request from Waterkeeper for those records.

25.    <u>Employee Training Program</u>. Within forty-five days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

a. <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

b. Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP", as defined in Section IX.A of the 2015 Permit) familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP.  All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

c. <u>Sampling Training</u>. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

d. <u>Visual Observation Training</u>. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

e. <u>Non-Storm Water Discharge Training</u>. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

f. <u>Employees</u>. All Designated Employees at the Facility shall participate in the Training Program annually; new Designated Employees shall

participate in the Training Program within thirty (30) days of their hiring date;

g.  Defendant shall maintain training records to document compliance with this paragraph and shall provide Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request;

h.  <u>Identification of Storm Water Pollution Prevention Team and Training Program Updates into SWPPP</u>. Within thirty (30) days of the effective date, Defendant shall update the SWPPP to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

26.  <u>SWPPP and Monitoring Implementation Plan ("MIP") Revisions and Update</u>. Within thirty (30) days of the Effective Date, Defendant shall amend the Facility's SWPPP and MIP to incorporate the requirements in this Consent Decree. Defendant agrees to submit the updated SWPPP and MIP to Waterkeeper upon completion for review and comment.

a.  <u>Review of SWPPP and/or MIP</u>. Waterkeeper shall have thirty (30) days from receipt of the amended SWPPP and/or MIP to propose any changes. Within thirty (30) days of receiving Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is no incorporated;

b.  Defendant shall revise the SWPPP and MIP if there are any material changes in the Facility's operations, including but not limited to changes in storm water discharge points or BMPs within thirty (30) days of the changes, which will be subject to Waterkeeper's review and comment as provided in paragraph 30 (a) above;

c.  The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP or MIP, and any remaining disputes will be

resolved through timely initiation of the dispute resolution procedures in Section IV below.

**E.     Compliance Monitoring and Reporting**

27.     Every year during the life of this Consent Decree, Waterkeeper may conduct one annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit.  In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection for the term of the Consent Decree at Plaintiff's request.  Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection.  Any Site Inspection shall occur during normal business hours, and Waterkeeper will provide Defendant with as much notice as possible—but at least twenty-four (24) hours' notice prior to a Site Inspection in anticipation of wet weather, and seventy-two (72) hours' notice during dry weather.  For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather.  Notice will be provided by telephone and electronic mail to the individual(s) designated below at paragraph 54.  During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to Waterkeeper. Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative.  Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

28.  <u>Document Provision</u>. During the term of this Consent Decree, Defendant shall notify and email documents to Waterkeeper at the address listed in paragraph 54 as follows:

a.  Defendant shall contemporaneously email Waterkeeper all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

b.  Defendant shall contemporaneously email Waterkeeper any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality within three (3) business days of receipt by Defendant.

29.  <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree in the amount of Two Thousand Five Hundred Dollars ($2,500.00) each year the Consent Decree is in effect.  Such payments shall be made payable to Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401, within seven (7) days of the Effective Date, and then at 12-month increments thereafter until the Consent Decree is terminated. Failure to submit payment as required under this paragraph will constitute breach of the Consent Decree.

**F.  Environmental Mitigation, Litigation Fees and Costs, Stipulated Penalties, and Interest**

30.  <u>Environmental Mitigation Project</u>. To remediate the alleged environmental harms resulting from allegations in the Complaint, Defendant agrees to make a payment of Thirty Thousand Dollars ($30,000.00) to the Rose

Foundation.  The payment shall be made within thirty (30) days of the Effective Date to fund environmental project activities that will benefit the Los Angeles River and the associated watershed delivered by certified mail or overnight delivery made payable to:  the Rose Foundation for Communities and the Environment, 201 4th Street, Ste. 102, Oakland, CA 94607.  Defendant shall provide Waterkeeper with a copy of such payment.

31.    Waterkeeper's Fees and Costs. Defendant agrees to pay a total of Forty-Five Thousand Dollars ($45,000.00) to Waterkeeper to partially reimburse Plaintiff for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter.  The payment in full shall be made within seven (7) days of the Effective Date and delivered by certified mail or overnight delivery made payable to:  Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way, Oakland CA, 94609.

32.    Interest on Late Payments. Defendant shall pay interest on any payments, fees, or costs owed to Waterkeeper under this Consent Decree that Waterkeeper has not received by the due date.  The interest shall accrue starting the first day after the payment is due and shall be computed at a rate of 0.05% per month (6% per year).  Interest on late payments shall be made payable to Waterkeeper and sent to the address listed in paragraph 54, below.

**IV.    Dispute Resolution**

33.    This Court shall retain jurisdiction over this matter for the term of this Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

34.    Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in

writing of the matter(s) in dispute and of the disputing party's proposal for resolution.  The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

35.     <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in paragraph 34, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California.  The Parties agree to request an expedited hearing schedule on the motion.

36.     In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

**V.    Mutual Release of Liability and Covenant Not to Sue**

37.     <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised based on the facts alleged in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

38.     <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and

directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

39.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Water Board, Regional Water Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the Stormwater Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    Miscellaneous Provisions

40.     No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation.  Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.  Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

41.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

42.     Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree.  A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

43.     Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein.  The captions

and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

44.   _Full Settlement_. This Consent Decree constitutes a full and final settlement of this matter.

45.   _Integration Clause_. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

46.   _Severability_. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

47.   _Choice of Law_. The laws of the United States shall govern this Consent Decree.

48.   _Diligence_. Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

49.   _Effect of Consent Decree_. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

50.   _Negotiated Settlement_. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

51.   _Modification of the Consent Decree_. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless

by a written instrument, signed by the Parties.  Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

52.   Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.  Defendant shall notify Plaintiff within ten (10) days of any assignment.

53.   Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency.  A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence.  Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

54.    Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic

mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

<u>If to Plaintiff</u>:

Kelly Clark, Senior Attorney
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, CA 90401
kelly@lawaterkeeper.org

<u>With copies to</u>:

Anthony M. Barnes
Aqua Terra Aeris Law Group LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
amb@atalawgroup.com

<u>If to Defendant</u>:

Holliday Rock Co, Inc.
John F. Holliday
1401 N. Benson Ave,
Upland, CA 91786
jfhhrc@hollidayrock.com

<u>With copies to</u>:

Tim Mares
Frog Environmental, Inc.
24426 S Main St. Suite 701
Carson, CA 90745
timmares@frogenv.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

The Parties have entered into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

**IT IS SO ORDERED.**

DATED: January 21, 2022

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE